UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED, and D. JACOBS, individually and as representatives of a class,<br><br>Plaintiffs,<br><br>v.<br><br>KAREN BASS, ET AL.,<br><br>Defendants. | Case No. 2:24-cv-09320-DOC-MAA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [44]** |

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Dkt. 44). The Court heard oral arguments on June 2, 2025. For the reasons described below, the Court **DENIES** Plaintiff's Motion for Summary Judgment.

//
//
//
//
//
//
//
//
//
//

## I. BACKGROUND

### A. Facts[1]

The only evidence submitted by Plaintiff in support of the Motion is a Declaration of Plaintiff David Jacobs ("Plaintiff" or "Jacobs"). Defendant has submitted body-worn camera video ("BWC") from three police officers including Officer Contreras, the relevant arrest report, the misdemeanor complaint filed against Jacobs, and the subsequent minutes of Jacobs' court proceedings in opposition to the Motion. *See* Dkts. 47-2, 47-3, 47-4, 47-5, 47-6, 47-7, 47-8, 47-9, 48.

Plaintiff is an unhoused individual who lives at the corner of Main Street and Westminster Avenue in the Venice neighborhood of the City of Los Angeles. Declaration of David Jacobs ("Jacobs Decl.") (Dkt. 44), at 1. Plaintiff states that on September 2, 2024 Defendants Contreras and Brown "accosted plaintiff with their nightsticks…used excessive force against plaintiff by battering him with nightsticks while he was asleep in his tent, and then, after he alighted from his tent, pursued him many blocks to the Venice Boardwalk (with an LAPD helicopter also in pursuit, and arrest plaintiff, with no probable cause to do so." *Id*. Plaintiff further states that he was charged by Contreras and Brown with violation of California Penal Code § 245(c) and as a result of this charge, Plaintiff spent from September 2, 2024, until October 23, 2024 in custody. *Id*. Plaintiff states the charge against him was dismissed on October 22, 2024 and he was released. *Id*. According to Plaintiff, all of his belongings including his clothing and tent were lost as a result of this incident. *Id*. at 2. Finally, Plaintiff states that Officer Contreras "jabbed me with her nightstick." *Id*.

Officer Contreras' BWC from September 2, 2024 shows the following. *See* Ex. 2 (Dkt. 48). Contreras put on gloves and then began checking to see if anyone was inside two tents erected on the sidewalk. Contreras was with her partner, Officer Brown, who was not wearing a BWC. Officer Brown tapped her baton on the pole of a tent corner several times. Jacobs then lifted the tent flap, pointed a spray can at Brown, and sprayed it at her from inside the tent.

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

Brown moved away from the tent and Jacobs went back in the tent. Contreras asked him, "Did you just spray pepper spray at me?" In response, Jacobs opened the tent flap again and yelled "get away from me." His head and shoulders then came out of the tent and he again sprayed a can towards Brown. The officers told him to stop spraying them and called for backup. Jacobs continued to yell at the officers to get away from him and then fully came out of his tent. Jacobs quickly stepped towards Contreras with the can held out. Contreras then pulled out her taser and warned that Jacobs was "going to get tased." Jacobs then ran away from Contreras and Brown, stopped further down the sidewalk, and continued to yell at the officers. He shouted "fucking bitch" and "get the fuck out of here" at the officers. Contreras warned Jacobs to stay away. He walked back closer to his tent and Contreras again threatened him with her outstretched taser. Jacobs then walked in the street to the officers' patrol car and Brown stated that he was pepper spraying the patrol car. The officers told him not to spray inside their car. Jacobs continued to yell insults at the officers and told them to "stop banging on my shit" and that he's "allowed to be here." Jacobs also yelled "you're not real" and "go back to community college." Jacobs walked back near his tent and Brown stated, "he's got pepper spray on him." Jacobs then ran away down the sidewalk away from the officers. At this point, Officer Chavez had arrived, and all three officers ran after Jacobs. Additional police cars arrived, and sirens are heard. The officers were not able to catch up to Jacobs. Contreras said to Chavez, "It's David. He pepper-sprayed me and Bri but it didn't reach us." The officer responded, "oh shit…still attempt." Contreras continued to walk around the block and a police helicopter can be heard overhead. Contreras' BWC is 7 minutes and 44 seconds long. *Id*.

  Officer Chavez's BWC confirms the second half of Contreras' BWC. *See* Ex. 3 (Dkt. 48). Officer Espinoza's BWC captures the eventual arrest of Jacobs outside a store along the Venice Boardwalk as follows. *See* Ex. 4 (Dkt. 48). Officers ran up to Jacobs, Jacobs sat on the ground, and officers handcuffed him. Jacobs said, "I didn't do anything wrong to them…I just sprayed something at them…to keep them away from my stuff, they were banging on it, they were breaking my things…they were breaking my stuff." Officers then walked Jacobs off the Boardwalk and to a police car on a nearby street. The officer walking with Jacobs asked him

what he sprayed at the officers and Jacobs responded "pepper spray…because they were banging on my tent, they can't be doing that…I'm protecting myself." Jacobs continued to say that officers were messing with his stuff and "banging" on his tent and stuff. He also stated repeatedly that he was "protecting myself from them ripping my stuff down." Officers then put Jacobs in the police car and the BWC ends after 10 minutes and 44 seconds. *Id*.

Officers arrested Jacobs for violation of California Penal Code §245(c), assault with a deadly weapon or by any means likely to produce great bodily harm on a peace officer, and transported him to jail. Ex. 1 (Dkt. 47-3). On September 4, 2024, the Los Angeles City Attorney's Office charged Jacobs with the following misdemeanors: California Penal Code § 148(a)(1), § 240/241(c), § 22810(g)(1), and Los Angeles Municipal Code § 41.18(e). Ex. 5 (Dkt. 47-5). Jacobs appeared in court and was arraigned on September 4, 2024. Ex. 6 (Dkt. 47-6). At the arraignment, Jacobs' appointed public defender declared a doubt as to his mental competence and criminal proceedings were suspended. *Id*. Ultimately, Jacobs was granted mental health diversion, released on October 2, 2024, and all counts were dismissed through diversion on October 23, 2024. Ex. 8 (Dkt. 47-8); Ex. 9 (Dkt. 47-9).

### B. Procedural History

On October 29, 2024, Plaintiff filed his Complaint (Dkt. 1). On December 13, 2024, Defendants Monique Contreras, Karen Bass, and Paul Krekorian filed a Motion to Dismiss (Dkt. 16). On January 24, 2025, the Court granted Defendants' Motion to Dismiss (Dkt. 26). The Court dismissed sixteen of the eighteen Defendants sued by Plaintiff. The only remaining Defendants are Los Angeles Police Officers Contreras and Brown. The Court dismissed all claims and allowed Plaintiff leave to amend only claims 19 (excessive force in violation of the Fourth Amendment) and 20 (malicious prosecution in violation of the Fourth Amendment). Claims 1 through 18 were dismissed with prejudice. On February 7, 2025, Plaintiff filed a First Amended Complaint (Dkt. 32). On April 26, 2025, Plaintiff filed a Motion to Consolidate with Case No. 2:22cv-08010-DOC (Dkt. 42). The Court denied consolidation on May 22, 2025, as moot because Case No. 2:22cv-08010-DOC was closed (Dkt. 51). On May 5, 2025, Plaintiff filed the present "Motion for Partial Summary Judgment On Issues Of Excessive Force and Of

Malicious Prosecution" ("Motion") (Dkt. 44). On May 12, 2025, Defendant Monique Contreras filed her Opposition to the Motion ("Opposition" or "Opp.") (Dkt. 47). On May 16, 2025, Plaintiff filed "Submission of New Authority On Use of Force" (Dkt. 49). On May 19, 2025, Plaintiff filed his Reply ("Reply") (Dkt. 50). The Court heard oral argument on June 2, 2025.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme

1  Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there
2  must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty*
3  *Lobby*, 477 U.S. at 252.

4       Summary judgment is also proper when there is no genuine dispute of material fact due
5  to a complete failure of proof. "In our view, the plain language of Rule 56(c) mandates the
6  entry of summary judgment, after adequate time for discovery and upon motion, against a party
7  who fails to make a showing sufficient to establish the existence of an element essential to that
8  party's case, and on which that party will bear the burden of proof at trial. In such a situation,
9  there can be 'no genuine issue as to any material fact,' since a complete failure of proof
10 concerning an essential element of the nonmoving party's case necessarily renders all other
11 facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the
12 nonmoving party has failed to make a sufficient showing on an essential element of her case
13 with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 322–24.

14      "One of the principal purposes of the summary judgment rule is to isolate and dispose of
15 factually unsupported claims or defenses, and we think it should be interpreted in a way that
16 allows it to accomplish this purpose." *Id*.

17 **III.   DISCUSSION**

18      Plaintiff argues that he is entitled to summary judgment on his two remaining §1983
19 claims, excessive force and malicious prosecution, against Defendant Officer Contreras.
20 Plaintiff only seeks summary judgment as to Contreras and does not mention Officer Brown,
21 the only other remaining Defendant here.

22     **A. Plaintiff's Fourth Amendment Excessive Force Claim**

23      Plaintiff argues that Officer Contreras hit him with her nightstick or baton which
24 constitutes excessive force.

25      "Our touchstone in evaluating an officer's use of force is objective reasonableness." *Est.*
26 *of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 627–28 (9th Cir. 2022) (citing *Graham v.*
27 *Connor*, 490 U.S. 386, 397 (1989)). The reasonableness of the force used is analyzed by
28

1  balancing the "nature and quality of the intrusion" on the plaintiff's Fourth Amendment rights
2  against the government's interest in the force used. *Id*.

3      Here, the question is first what, if any, force was used. The BWC evidence contradicts
4  Plaintiff's declaration of the police interaction on September 2, 2024. At no time did Contreras
5  or any other officer use her baton against Plaintiff or make physical contact with Plaintiff in any
6  way. Brown hits her baton against the corner pole of Plaintiff's tent several times. Contreras
7  and Brown held out a taser and a baton to warn Plaintiff to stay away from them but neither
8  used their weapons against Plaintiff. Contreras never took out her baton. Plaintiff's version "is
9  blatantly contradicted by the record" and "so utterly discredited by the record that no
10 reasonable jury could have believed him" so the Court must adopt the version of the facts
11 shown in the video evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

12     Plaintiff's statements to officers during his arrest confirm these facts. Plaintiff never
13 complains that he was hit or touched by officers but rather repeatedly complains that they
14 touched his tent and "stuff."

15     Plaintiff briefly argues that the force used may also violate the Fourteenth Amendment.
16 Mot. at 4. The Court rejects this argument for the same reason articulated above.

17     In short, Plaintiff argues force was used that never in fact occurred. Based on the
18 undisputed facts, Plaintiff is not entitled to judgment as a matter of law on his excessive force
19 claim. The Motion is DENIED as to this claim.

20 **B. Plaintiff's Fourth Amendment Malicious Prosecution Claim**

21     Plaintiff argues that Officer Contreras maliciously prosecuted Plaintiff by charging him
22 without probable cause. Mot. at 5. Plaintiff argues that Contreras "over-charged" plaintiff by
23 charging him with violation of California Penal Code §245(c) ("PC 245(c)")because pepper
24 spray is not a deadly weapon. Reply at 5.

25     The Supreme Court has recognized a Fourth Amendment claim under §1983 for
26 malicious prosecution. *Thompson v. Clark*, 596 U.S. 36, 42 (2022). "[T]he gravamen of the
27 Fourth Amendment claim for malicious prosecution…is the wrongful initiation of charges

without probable cause." *Id*. at 43. The cause of action accrues when the prosecution terminates without a conviction. *Id*. at 48-49.

To prevail on a malicious prosecution claim, Plaintiff must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). "Probable cause is an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009).

Normally, the filing of a criminal complaint by the prosecutor shields "those who participated in the investigation or filed a report that resulted in the initiation of proceedings" (here, Officer Contreras). *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id*. Plaintiff provides no argument about how this shield and the necessary showing to overcome it might apply. Because the city attorney dropped the PC 245(c) charge and only filed misdemeanor charges, it is unclear if the shield even applies to officers here. Defendant does not provide substantive analysis on this issue other than asserting that Contreras is immunized by the filing of the complaint.

Here, Plaintiff was arrested for violation of PC 245(c), a felony, and then the city attorney charged him two days later with the lesser misdemeanor assault charge and other misdemeanor charges. There is no doubt that there was probable cause for the misdemeanor counts charged by the city attorney based on Plaintiff spraying officers with pepper spray and fleeing the scene. Plaintiff does not sue the city attorney. He only sues Officer Contreras for malicious prosecution. Thus, assuming the filing of the criminal complaint does *not* shield Contreras, the questions are (1) whether there was probable cause for Contreras to charge Plaintiff with PC 245(c) and, if there was not probable cause, (2) whether damages were caused by that felony charge.

1        Recently, the Supreme Court resolved a circuit split by adopting the "charge-specific" rule instead of the "any-charge" rule in Fourth Amendment malicious prosecution claims. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556 (2024). The any-charge rule provided that as long as a plaintiff faced any valid charge, a single meritless charge did not create a cause of action for malicious prosecution. *Id*. at 560-61. The charge-specific rule, on the other hand, requires that each and every criminal charge be supported by probable cause. *Id*. at 561. In *Chiaverini*, the plaintiff was charged with money laundering (a felony) and two misdemeanors. The Sixth Circuit had held that because there was probable cause for the misdemeanors, the plaintiff could not pursue his malicious prosecution claim for the felony. *Id*. at 559-561. The Supreme Court, reversing, held that the plaintiff's claim could go forward challenging the felony charge under the charge-specific rule. *Id*. at 562. This conclusion makes sense from a police accountability standpoint because the any-charge rule would mean police officers could insulate themselves from liability by adding any minor charge supported by probable cause to otherwise baseless felony charges.

       A "Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a seizure…" *Id*. at 564. Here, there is no dispute that Plaintiff was seized by being arrested and detained on the single PC 245(c) charge.

       The Supreme Court, however, declined to decide what the proper causation test is under the charge-specific rule. *Id*. at 564-65. One causation test discussed was the but-for causation test which would mean the plaintiff would have to prove that the baseless charge was the cause in fact of particular damages and those damages must be separate and distinct from the damages resulting from the valid charges. *Id*. at 565. Under any causation test, the Plaintiff here would only be entitled to damages for the two days that he was detained only on the felony charge, the only charge he argues was without probable cause. He was arrested on September 2, 2024, and the city attorney filed the misdemeanor charges and dropped the felony charge on September 4, 2024. In *Chiaverini*, the plaintiff sued the police after spending three days in custody. *Id*. at 560.

"Probable cause exists where 'officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.'" *Hollamon v. City of Los Angeles*, No. 24-341, 2025 WL 927310, at *1 (9th Cir. Mar. 27, 2025) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)). Defendant argues that there was probable cause for the PC 245(c) charge because Plaintiff pepper-sprayed the officers and pepper spray has been recognized as a dangerous or deadly weapon by the California Court of Appeal. Opp. at 9 (quoting *People v. Blake*, 117 Cal. App. 4th 543, 557 (Cal. Ct. 2004)).

PC 245(c) provides: "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years." Cal. Penal Code §245(c).

"Most courts have found tear gas, mace or pepper spray to be dangerous or deadly weapons capable of inflicting great bodily injury." *Blake*, 117 Cal. App. 4th at 557. The California Court of Appeal in *Blake* upheld a jury verdict finding that the defendant's use of pepper spray or mace during robberies was a dangerous weapon capable of inflicting serious bodily injury. *Id*. Based on *Blake* and the undisputed facts in the BWC video, the Court concludes that there was probable cause to arrest and initiate the PC 245(c) against Plaintiff. Therefore, Plaintiff is not entitled to summary judgment on the malicious prosecution claim and the Motion is denied on this claim.

### IV.  Disposition

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment.

DATED: June 5, 2025

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE