**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**KATHLEEN KENEALY**, Chief Assistant City Attorney (SBN 212289)
**CORY M. BRENTE**, Senior Assistant City Attorney (SBN 115453)
**TY A. FORD**, Deputy City Attorney (SBN 218365)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Phone No.: (213) 978-6900 / Fax No.: (213) 978-8785
Email: Ty.Ford@lacity.org

*Attorneys for Defendant*, MONIQUE CONTRERAS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED, AS A CLASS REPRESENTED BY D. JACOBS, as representative of a class of unhoused persons who reside and resided in the streets and on the sidewalks of the City of Los Angeles,<br><br>        Plaintiffs.<br><br>        v.<br><br>KAREN BASS, ERIC MICHAEL GARCETTI, PAUL KREKORIAN, ROBERT BLUMENFIELD, NITHYA RAMAN, KATY YAROSLAVSKY, IMELDA PADILLA, MONICA RODRIGUEZ, MARQUEECE-HARRIS-DAWSON, JOHN LEE, CURREN PRICE, HEATHER HUTT, TRACI PARK, HUGO SOTO-MARTINEZ, KEVIN DE LEON, TIM Mc OSKER, MONIQUE CONTRERAS, 1"DOE" BROWN, ONE HUNDRED UNKNOWN NAMED DEFENDANTS, 1-100,<br><br>        Defendants. | CASE NO. 2:24-cv-09320 DOC (MAAx)<br>*Assigned to: Hon. Judge David O. Carter, Ronald Reagan Cthse, Ctrm 10A; Hon. Mag. Maria A. Audero, Roybal Bldg, Ctrm. 880*<br><br>**DEFENDANT MONIQUE CONTRERAS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY. PARTIAL SUMMARY JUDGMENT**<br><br>**[Fed. R. Civ. P. 56]**<br><br>***[Filed concurrently with Separate Statement of Uncontroverted Facts and Conclusion of Law; Declarations of Monique Contreras and Eric Melendez w-Exhibits; Request for Judicial Notice w-Ford Decl and Exhibits; Notice of Lodging Flashdrive and [Proposed] Order]***<br><br>Date:        July 14. 2025<br>Time:        8:30 a.m.<br>Crtrm.:     10A<br><br>Trial Date:    May 12. 2026<br>Complaint Filed:  October 29, 2024 |

///

1

**TO THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on **July 14, 2026, at 8:30 a.m.** or as soon thereafter as counsel may be heard in Courtroom 10A of the Ronald Reagan Federal Building and United States Courthouse, 411 West 4th Street, Room 1053, Santa Ana, CA 92701-4516, before the Honorable David O. Carter, United States District Judge, Defendant City of Los Angeles Monique Contreras will move this Honorable Court, pursuant to Federal Rule of Civil Procedure ("FRCP") 56(c) for summary judgment as to all claims against Defendant Monique Contreras, or, alternatively, partial summary judgment, on the following grounds:

1.     Defendant Monique Contreras is entitled to judgment as a matter of law on Plaintiff's Claim 19, excessive force in violation of the Fourth Amendment because the undisputed evidence shows that Officer Contreras *never used any force* on Plaintiff.  The Court has already made a finding of fact that Officer Contreras never used force on Plaintiff.

2.     Defendant Monique Contreras is entitled to judgment as a matter of law on Plaintiff's Claim 20, malicious prosecution in violation of the Fourth Amendment, because the undisputed evidence shows that there was probable cause for the Penal Code § 245(c) charge, and there is no evidence to show that Officer Contreras had any involvement in the filing of criminal charges.  The Court has already made a finding of fact as to the probable cause for the charge.

3.     In addition, Monique Contreras is entitled to judgment in her favor under the doctrine of qualified immunity.

This motion was filed following meet and confer efforts pursuant to Central District, Local Rule 7-3, on April 15, 2025. (*See* Declaration of Ty A. Ford at ¶ 7, filed concurrently).

///

This motion is based on Plaintiff's Complaint, the Memorandum of Points and Authorities attached hereto, the Separate Statement of Uncontroverted Facts and Conclusions of Law; the Declarations of Ty A. Ford, Eric Melendez, and Monique Contreras; the Request for Judicial Notice and Exhibits; the Notice of Lodging and Exhibits; the Court's file and orders herein; and any other evidence presented at or before the time of the hearing on this motion.

Dated:  June 13, 2025          **HYDEE FELDSTEIN SOTO**, City Attorney
                               **DENISE C. MILLS**, Chief Deputy City Attorney
                               **KATHLEEN KENEALY,** Chief Assistant City Attorney
                               **CORY M. BRENTE**, Senior Assistant City Attorney

                               By:_____*Ty A. Ford*_____
                               TY A. FORD, Deputy City Attorney
                               *Attorneys for Defendant,* MONIQUE CONTRERAS

3

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION .........................................................................................1

II.    STATEMENT OF FACTS .........................................................................2

III.    LEGAL STANDARDS ON SUMMARY JUDGMENT ...............................6

IV.    PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS
BECAUSE THE UNDISPUTED EVIDENCE PROVES
THAT DEFENDANT CONTRERAS NEVER USED
*ANY* FORCE UPON PLAINTIFF .....................................................................7

V.    PLAINTIFF'S MALICIOUS PROSECUTION CLAIM
FAILS BECAUSE THE UNDISPUTED EVIDENCE
PROVES THAT THERE WAS PROBABLE CAUSE
TO SUPPORT THE PENAL CODE § 245(c) CHARGE.............................8

VI.    ADDITIONALLY, OFFICER CONTRERAS IS
ENTITLED TO QUALIFIED IMMUNITY .................................................12

VII.    CONCLUSION.............................................................................................16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>**Cases**</u>

*Act Up!/Portland v. Bagley*,
  988 F.2d 868 (9th Cir. 1993) ...................................................................13

*Addisu v. Fred Meyer*,
  198 F.3d 1130 (9th Cir. 2000) ...................................................................6

*Anderson v. Creighton*,
  483 U.S. 635 (1987)...............................................................13, 14, 15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, (1986)....................................................................6

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...................................................................14

*Awabdy v. City of Adelanto*,
  368 F.3d 1062 (9th Cir. 2004) ...................................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)....................................................................6

*Chiaverini v. Cty of Napoleon, Ohio*,
  602 U.S. 556 (2024)..............................................................8, 15, 16

*City of Escondido v. Emmons*,
  139 S. Ct. 500 (2019) ...................................................................14, 15

*City of Tahlequah v. Bond*,
  142 S. Ct. 9 (2021) ...................................................................14, 15

*Cohen v. San Bernardino Valley College*,
  92 F.3d 968 (9th Cir. 1996) ...................................................................14

*Franklin v. Fox*,
  312 F.3d 423 (9th Cir. 2002) ...................................................................13

*Freeman v. City of Santa Ana*,
  68 F.3d 1180 (9th Cir.1995) ...................................................................9

*Garcia v. County of Merced*,
  639 F.3d 1206 (9th Cir. 2011) ...................................................................13

*Gasho v. United States*,
  39 F.3d 1420 (9th Cir. 1994) ...................................................................14

*Graham v. Connor*,
  490 U.S. 386 (1989)....................................................................7, 8

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)....................................................................14

*Hollamon v. City of Los Angeles*,
  No. 24-341, 2025 WL 927310 (9th Cir. Mar. 27, 2025) ........................................11

*Hope v. Pelzer,*
  536 U.S. 730 (2002)......................................................................................14

*Hopson v. Alexander,*
  71 F.4th 692 (9th Cir. 2023) ........................................................................15

*Hunter v. Bryant,*
  502 U.S. 224 (1991)......................................................................................13

*Kisela v. Hughes,*
  138 S. Ct. 1148 (2019)..................................................................................14

*Lassiter v. City of Bremerton,*
  556 F.3d 1049 (9th Cir. 2009) ........................................................................9

*Lee v. Cty of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) ..........................................................................9

*Malley v. Briggs,*
  475 U.S. 335 (1986)......................................................................................13

*Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp,*
  475 U.S. (1986).................................................................................................6

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985)......................................................................................13

*Morales v. Fry,*
  873 F.3d 817 (9th Cir. 2017) ........................................................................12

*Pearson v. Callahan,*
  555 U.S. 223 (2009)......................................................................................13

*People v. Blake,*
  117 Cal. App. 4th 543 (Cal. Ct. 2004)..........................................10, 11, 12, 15

*Saucier v. Katz,*
  533 U.S. 194 (2001)................................................................................13, 14

*Scott v. Harris,*
  550 U.S. 372 (2007).....................................................................................7, 8

*Siegert v. Gilley,*
  500 U.S. 226 (1991)......................................................................................13

*Smiddy v. Varney,*
  665 F.2d 261 (9th Cir. 1981) ..........................................................................9

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,*
  809 F.2d 626 (9th Cir. 1987) ..........................................................................6

*Wallace v. Kato,*
  549 U.S. 384 (2007)........................................................................................9

*White v. Pauly,*
  137 S. Ct. 548 (2017)....................................................................................14

*Wool v. Tandem Computers, Inc.,*
  818 F.2d 1433 (9th Cir. 1987) ........................................................................6

iii

*Wyatt v. Cole*,
   504 U.S. 158 (1992) ................................................................................. 12

**Statutes**

42 U.S.C. § 1983 ......................................................... 1, 2, 7, 9, 11, 12
California Penal Code section 245(c) ................................ 2, 3, 5, 8, 9, 11, 12, 15, 16
California Penal Code sections 148(a)(1) ............................................. 3, 5, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

On September 2, 2024, members of the Los Angeles Police Department, including Officer Monique Contreras ("Officer Contreras"), approached Plaintiff's tent which was located on a sidewalk within 500 feet of a school. When the Officers attempted to speak with Plaintiff, he opened the tent and sprayed them with pepper spray, ran from his tent, and continued to pepper spray the Officers as they tried to approach him. Plaintiff eventually was apprehended, confessed to spraying the Officers with pepper spray, and was arrested. Plaintiff was not struck by Officers at any time and had no injuries on his person. Most of the incident is captured on body-worn camera. Criminal charges were filed and, at the arraignment hearing, Plaintiff's competency was called into question and the matter was referred to the court's Mental Health Division.

The only remaining Defendant who has appeared in the matter is Officer Monique Contreras, and the only remaining claims at issue are allegations of excessive force (Claim 19) and malicious prosecution (Claim 20), both brought under 42 U.S.C. § 1983.[1] The Court previously heard and denied Plaintiff's Motion for Summary Judgement, on June 6, 2025 (Dkt. 54), and in doing so, examined the same video evidence that is submitted herewith the instant motion.

---

[1] "On October 29, 2024, Plaintiff filed his Complaint (Dkt. 1). On December 13, 2024, Defendants Monique Contreras, Karen Bass, and Paul Krekorian filed a Motion to Dismiss (Dkt. 16). On January 24, 2025, the Court granted Defendants' Motion to Dismiss (Dkt. 26). The Court dismissed sixteen of the eighteen Defendants sued by Plaintiff. The only remaining Defendants are Los Angeles Police Officers Contreras and Brown. The Court dismissed all claims and allowed Plaintiff leave to amend only claims 19 (excessive force in violation of the Fourth Amendment) and 20 (malicious prosecution in violation of the Fourth Amendment). Claims 1 through 18 were dismissed with prejudice. On February 7, 2025, Plaintiff filed a First Amended Complaint (Dkt. 32). On April 26, 2025, Plaintiff filed a Motion to Consolidate with Case No. 2:22cv-08010-DOC (Dkt. 42). The Court denied consolidation on May 22, 2025, as moot because Case No. 2:22cv-08010-DOC was closed (Dkt. 51). On May 5, 2025, Plaintiff filed [his …] 'Motion for Partial Summary Judgment On Issues Of Excessive Force and Of Malicious Prosecution ('Motion') (Dkt. 44)." (Dkt. 54)

1

In the present case, there are no genuine triable issues of fact. Based on the evidence already presented to this Court in Plaintiff's Motion for Partial Summary Judgment and Defendant Contreras's Opposition, the Court has already made the requisite findings of fact that entitles Defendant Contreras to summary judgment on the remaining two claims, as explained, *infra*. (*See* Dkt. 54, p. 2-4).

Defendant Contreras is entitled to summary judgment on both of Plaintiff's remaining claims under 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights for excessive force and malicious prosecution because the undisputed facts and evidence show that: (1) no force was ever used by Officer Contreras on Plaintiff; and (2) Officer Contreras did not maliciously prosecute Plaintiff. In ruling on Plaintiff's prior motion for summary judgment, the Court found that there was probable cause to arrest and initiate the Penal Code Section 245(c) charge against Plaintiff. (Dkt. 54 at p. 7-10).

## II.   **STATEMENT OF FACTS.**

On September 2, 2024, Officer Contreras and Officer Brown and driving in a marked black and white police SUV. *See* Defendant's Undisputed Material Facts ("UMF") #1. Officer Contreras, who is shorter than Officer Brown, was wearing a full police uniform and a body-worn camera which captured part of the incident. UMF #2. Officer Brown also was wearing a full police uniform but was not wearing a body-worn camera. UMF #3.

Officer Contreras and Officer Brown observed Plaintiff's tent erected on a sidewalk within 500 feet of a school in violation of Los Angeles Municipal Code ("LAMC") section 41.18(e). UMF #4. Officer Contreras recognized Plaintiff's tent and knew that he previously had been warned, cited, and booked for violating LAMC section 41.18(e). UMF #5. The Officers parked and exited their police vehicle to investigate. UMF #6.

///

///

2

The Officers approached Plaintiff's tent and asked him to exit his tent. UMF #7 However, Plaintiff opened the flap of the tent and sprayed them with pepper spray. UMF #8. Plaintiff, who was wearing only shorts and no shirt, then ran from his tent and continued to pepper spray towards the Officers as they tried to approach him. UMF #9. Plaintiff also ran into the street to their police vehicle and pepper sprayed it. UMF #10. The Officers requested back-up to assist. UMF #11. Plaintiff then fled from the area and the Officers chased him on foot. UMF #12.

Additional Officers responded and eventually took Plaintiff into custody. UMF #13. After he was taken into custody and prior to being transported from the scene, Plaintiff admitted that he sprayed the Officers with pepper spray. UMF #14. Plaintiff was arrested for violating California Penal Code section 245(c) [assault with a deadly weapon on a peace officer]. UMF #15.

Plaintiff did not have any visible injuries on his person and no injuries were reported. UMF #16. Officer Contreras did not draw her police baton during the incident, and did not strike or make physical contact with Plaintiff. UMF #17.

On September 4, 2024, the City Attorney's Office filed a misdemeanor complaint, that is signed by the prosecuting Deputy City Attorney, against Plaintiff charging him with violations of California Penal Code sections 148(a)(1) [resisting, delaying or obstructing officer], 240/241(c) [assault on peace officer], 22810(g)(1) [unlawful use of tear gas] and LAMC section 41.18(e) [sitting/sleeping/lying on sidewalk within 500 feet of school/daycare].  UMF #18. Plaintiff appeared in court on September 4, 2024, for an arraignment and plea hearing. UMF #19. At the Arraignment hearing, Plaintiff's mental competency was called into question, the criminal proceedings were suspended, and a psychiatrist was appointed to evaluate Plaintiff's competency. UMF #20.

The matter was then transferred to the state court's Mental Health Division for further proceedings. UMF #21. After evaluation, the Mental Health Division granted Plaintiff diversion on all charges with certain mental health treatment conditions and

ordered him conditionally released on October 2, 2024. UMF #22. All charges were ultimately dismissed pursuant to Penal Code section 1385 (interest of justice) on October 23, 2024. UMF #23.

No LAPD police officers, including Officer Contreras, were involved in or had any input in the court process in any manner. UMF #24.

In its Order Denying Plaintiff's Motion for Summary Judgment (Dkt. 54), the Court made the following findings of fact regarding what is seen on the Body-Worn Camera videos ("BWC") and other exhibits submitted by Defendant Contreras:[2]

> Officer Contreras' BWC from September 2, 2024 shows the following. *See* Ex. 2 (Dkt. 48). Contreras put on gloves and then began checking to see if anyone was inside two tents erected on the sidewalk. Contreras was with her partner, Officer Brown, who was not wearing a BWC. Officer Brown tapped her baton on the pole of a tent corner several times. Jacobs then lifted the tent flap, pointed a spray can at Brown, and sprayed it at her from inside the tent. Brown moved away from the tent and Jacobs went back in the tent. Contreras asked him, "Did you just spray pepper spray at me?" In response, Jacobs opened the tent flap again and yelled "get away from me." His head and shoulders then came out of the tent and he again sprayed a can towards Brown. The officers told him to stop spraying them and called for backup. Jacobs continued to yell at the officers to get away from him and then fully came out of his tent. Jacobs quickly stepped towards Contreras with the can held out. Contreras then pulled out her taser and warned that Jacobs was "going to get tased." Jacobs then ran away from Contreras and Brown, stopped further down the sidewalk, and continued to yell at the officers. He shouted "fucking bitch" and "get the fuck out of here" at the officers. Contreras warned Jacobs to stay away. He walked back closer to his tent and Contreras again threatened him with her outstretched taser. Jacobs then walked in the street to the officers' patrol car and Brown stated that he was pepper spraying the patrol car. The officers told him not to spray inside their car. Jacobs continued to yell insults at the officers and told them to "stop banging on my shit" and that he's "allowed to be here." Jacobs also yelled "you're not real" and "go back to community college." Jacobs walked back

---

[2] For the Court's convenience and clarity, in the instant motion, Defendant has submitted the same exhibits using the same exhibit numbers as in Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment. (Dkt. 47).

near his tent and Brown stated, "he's got pepper spray on him." Jacobs then ran away down the sidewalk away from the officers. At this point, Officer Chavez had arrived, and all three officers ran after Jacobs. Additional police cars arrived, and sirens are heard. The officers were not able to catch up to Jacobs. Contreras said to Chavez, "It's David. He pepper-sprayed me and Bri but it didn't reach us." The officer responded, "oh shit…still attempt." Contreras continued to walk around the block and a police helicopter can be heard overhead. Contreras' BWC is 7 minutes and 44 seconds long. *Id*.

Officer Chavez's BWC confirms the second half of Contreras' BWC. *See* Ex. 3 (Dkt. 48). Officer Espinoza's BWC captures the eventual arrest of Jacobs outside a store along the Venice Boardwalk as follows. *See* Ex. 4 (Dkt. 48). Officers ran up to Jacobs, Jacobs sat on the ground, and officers handcuffed him. Jacobs said, "I didn't do anything wrong to them…I just sprayed something at them…to keep them away from my stuff, they were banging on it, they were breaking my things…they were breaking my stuff." Officers then walked Jacobs off the Boardwalk and to a police car on a nearby street. The officer walking with Jacobs asked him what he sprayed at the officers and Jacobs responded "pepper spray…because they were banging on my tent, they can't be doing that…I'm protecting myself." Jacobs continued to say that officers were messing with his stuff and "banging" on his tent and stuff. He also stated repeatedly that he was "protecting myself from them ripping my stuff down." Officers then put Jacobs in the police car and the BWC ends after 10 minutes and 44 seconds. *Id*.

Officers arrested Jacobs for violation of California Penal Code §245(c), assault with a deadly weapon or by any means likely to produce great bodily harm on a peace officer, and transported him to jail. Ex. 1 (Dkt. 47-3). On September 4, 2024, the Los Angeles City Attorney's Office charged Jacobs with the following misdemeanors: California Penal Code § 148(a)(1), § 240/241(c), § 22810(g)(1), and Los Angeles Municipal Code § 41.18(e). Ex. 5 (Dkt. 47-5). Jacobs appeared in court and was arraigned on September 4, 2024. Ex. 6 (Dkt. 47-6). At the arraignment, Jacobs's appointed public defender declared a doubt as to his mental competence and criminal proceedings were suspended. *Id*. Ultimately, Jacobs was granted mental health diversion, released on October 2, 2024, and all counts were dismissed through diversion on October 23, 2024. Ex. 8 (Dkt. 47-8); Ex. 9 (Dkt. 47-9). *Id*. at p. 2-4.

///

5

## III.    LEGAL STANDARDS ON SUMMARY JUDGMENT.

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp,* 475 U.S. at 574, 587 (1986).  On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The moving party may satisfy its burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita,* 457 U.S. at 586. The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987).  A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. *See Addisu v. Fred Meyer,* 198 F.3d 1130, 1134 (9th Cir. 2000). Only genuine disputes "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party," will properly preclude the entry of summary judgment. *Anderson,* 477 U.S. at 248. The Supreme Court has stated, "Where the record taken as a whole could not lead the trier of fact to find for the nonmoving party, there is not genuine issue for trial." *Matsushita,* 475 U.S. at 586-587. The mere existence of *some* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *See Anderson,* 477 U.S. at 247-248.

///

6

Further, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380-381 (2007) [finding that a videotape of the incident eviscerated the plaintiff's version of events and that the defendant officer was entitled to summary judgment].

## IV. PLAINTIFF'S EXCESSIVE FORCE CLAIM FAILS BECAUSE THE UNDISPUTED EVIDENCE PROVES THAT DEFENDANT CONTRERAS NEVER USED *ANY* FORCE UPON PLAINTIFF.

In his 19th Claim, under 42 U.S.C. §1983 for a Fourth Amendment violation, Plaintiff alleges, "Defendants used excessive force against plaintiff by striking him with their baton(s), and thereby harmed, injured [him]..." (FAC, Dkt. 32 at ¶ 210). Police officers are allowed to use force to effect a detention or arrest or to protect the safety of themselves and others as long as the force is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989). To determine whether the force used was reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations omitted).

Here, the undisputed evidence proves that Defendant Officer Contreras did not strike Plaintiff with her baton, and, in fact, *used no force whatsoever*, never making any physical contact with Plaintiff by touching him or causing him to be touched by any means (the same is true for Officer Brown). UMF #19. The BWC video evidence shows that Officer Contreras did not use a police baton against Plaintiff. UMF ##6-17. The video evidence plainly shows that Officer Contreras did not draw her police baton and did not touch Plaintiff with it. UMF ##6-17. The video evidence further shows that Officer Contreras was not even close enough to Plaintiff to touch him with her police baton even if she had drawn it, which she did not. UMF ##6-17. The evidence further

shows that Plaintiff did not suffer or complain about any injuries from a police baton.
UMF #16.

In this Court's order denying of Plaintiff's Motion for Partial Summary
Judgment, the Court made findings of fact consistent with Defendant Contreras's
position:

> Here, the question is first what, if any, force was used. The BWC evidence
> contradicts. Plaintiff's declaration of the police interaction on September 2,
> 2024. At no time did Contreras or any other officer use her baton against
> Plaintiff or make physical contact with Plaintiff in anyway. Brown hits her
> baton against the corner pole of Plaintiff's tent several times. Contreras and
> Brown held out a taser and a baton to warn Plaintiff to stay away from them
> but neither used their weapons against Plaintiff. Contreras never took out her
> baton. Plaintiff's version "is blatantly contradicted by the record" and "so
> utterly discredited by the record that no reasonable jury could have believed
> him" so the Court must adopt the version of the facts shown in the video
> evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

> Plaintiff's statements to officers during his arrest confirm these facts.
> Plaintiff never complains that he was hit or touched by officers but rather
> repeatedly complains that they touched his tent and "stuff."

> … In short, Plaintiff argues force was used that never in fact occurred.

(Dkt. 54 at p. 7).

Thus, based on the undisputed facts, Defendant Contreras is entitled to summary
judgment on Plaintiff's 19th claim for excessive force.

## V.    PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS BECAUSE THE UNDISPUTED EVIDENCE PROVES THAT THERE WAS PROBABLE CAUSE TO SUPPORT THE PENAL CODE § 245(c) CHARGE.

The Fourth Amendment applies to claims of unlawful search and seizure. *See e.g.*
*Graham v. Connor*, 490 U.S. 386 (1989). The Fourth Amendment also applies to
malicious prosecution claims in connection with a pretrial detention that is alleged to be
based charges lacking probable cause, and thus, are invalid. *See Chiaverini v. Cty of*

*Napoleon, Ohio*, 602 U.S. 556, 556 (2024).  Unlawful "seizure" claims, including malicious prosecution, based on the Fourth Amendment cease when the arrestee appears before a court and is held to answer, *i.e.* an arraignment hearing. *See Wallace v. Kato*, 549 U.S. 384, 389–92 (2007). The Fourteenth Amendment substantive due process applies to claims after the arraignment, such as wrongful confinement and malicious prosecution. *See Lee v. Cty of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001).

In order to prevail on a Section 1983 claim based on malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir.1995). The presence of probable cause is an "absolute defense" to malicious prosecution. *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054-55 (9th Cir. 2009). Further, the filing of a criminal complaint immunizes the police officers from liability, as the prosecutor's decision to file criminal charges and to continue to prosecute a criminal defendant is presumed to be based on the independent judgment of the prosecutor in determining that probable cause exists. *See Smiddy v. Varney,* 665 F.2d 261, 266 (9th Cir. 1981) ("*Smiddy I*"). Plaintiff cannot, with any competent, admissible evidence, rebut this presumption of prosecutorial independence or show a lack of probable cause to arrest and prosecute him for the delineated offenses.

Here, after the Officers approached Plaintiff's tent, Plaintiff opened the tent, sprayed pepper spray at them, exited his tent, and continued to spray pepper spray in their direction when they were trying to approach him and take him into custody. UMF ##7-12. Plaintiff, who ran, was ultimately apprehended and taken into custody by other Officers. UMF ##12-13. Plaintiff was arrested for violating California Penal Code Section 245(c) [assault with a deadly weapon on a peace officer]. UMF #15. On September 4, 2024, the Los Angeles City Attorney's Office filed a misdemeanor complaint against Plaintiff charging him with violations of California Penal Code

sections 148(a)(1) [resisting, delaying or obstructing officer], 240/241(c) [assault on peace officer], 22810(g)(1) [unlawful use of tear gas] and Los Angeles Municipal Code section 41.18(e) [sitting/sleeping/lying on sidewalk within 500 feet of school/daycare]. UMF #18. The Misdemeanor Complaint was signed by the prosecuting Deputy City Attorney. UMF #18. To be sure, Defendant Contreras did not author the police report regarding the incident with Plaintiff, nor did she have any direct involvement in his arrest. UMF #13; Ex. 1. Certainly, given her lack of involvement in Plaintiff's physical arrest and the filing of criminal charges, there is absolutely no evidence that Officer Contreras acted with malice and for the purpose of denying Plaintiff his constitutional rights.

As the evidence shows, there was ample probable cause to arrest Plaintiff's for his assaultive actions towards the police Officers. Further, "[m]ost courts have found tear gas, mace or pepper spray to be dangerous or deadly weapons capable of inflicting great bodily injury" within the meaning of Penal Code Section 245(c). *People v. Blake*, 117 Cal. App. 4th 543, 557 (Cal. Ct. 2004), as modified (Apr. 16, 2004).

After his valid arrest, Plaintiff appeared in court on September 4, 2024, for an arraignment and plea hearing. At the Arraignment hearing, Plaintiff's mental competency was called into question, the criminal proceedings were suspended, and a psychiatrist was appointed to evaluate Plaintiff's competency. The matter was then transferred to the state court's Mental Health Division for further proceedings. After evaluation, the Mental Health Division granted Plaintiff diversion on all charges with certain mental health treatment conditions and ordered him conditionally released on October 2, 2024. All charges were ultimately dismissed pursuant to Penal Code section 1385 (interests of justice) on October 23, 2024, as a condition of his "diversion" in his Mental Health Division. There is no evidence that Officer Contreras, or any other LAPD police officers, were involved in or had any input in the court process in any manner. UMF #24.

As this Court pointed out in its order denying Plaintiff's Motion for Partial

Summary Judgment,

> Normally, the filing of a criminal complaint by the prosecutor shields "those who participated in the investigation or filed a report that resulted in the initiation of proceedings" (here, Officer Contreras). *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id*. …

> There is no doubt that there was probable cause for the misdemeanor counts charged by the city attorney based on Plaintiff spraying officers with pepper spray and fleeing the scene. Plaintiff does not sue the city attorney. He only sues Officer Contreras for malicious prosecution. Thus, assuming the filing of the criminal complaint does not shield Contreras, the questions are (1) whether there was probable cause for Contreras to charge Plaintiff with PC 245(c) and, if there was not probable cause, (2) whether damages were caused by that felony charge.

> "Probable cause exists where 'officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested.'" *Hollamon v. City of Los Angeles*, No. 24-341, 2025 WL 927310, at *1 (9th Cir. Mar. 27, 2025) (quoting *United States v. Lopez*, 482 F.3d1067, 1072 (9th Cir. 2007))….

> PC 245(c) provides: "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years." Cal. Penal Code §245(c).

> Most courts have found tear gas, mace or pepper spray to be dangerous or deadly weapons capable of inflicting great bodily injury." [*People v.*] *Blake*,

117 Cal. App. 4th [543] at 557 [(Cal. Ct. 2004)]. The California Court of Appeal in *Blake* upheld a jury verdict finding that the defendant's use of pepper spray or mace during robberies was a dangerous weapon capable of inflicting serious bodily injury. *Id*. <u>Based on *Blake* and the undisputed facts in the BWC video, *the Court concludes that there was probable cause to arrest and initiate the PC 245(c) against Plaintiff.*</u>

(Dkt. 54 at pp. 8, 10) [emphasis added].

Thus, as the Court has already found, there was probable cause as a matter of law for the PC 245(c) charge (and the misdemeanors that were filed by the City Attorney), regardless of whether Officer Contreras had any involvement in the filing of criminal charges against Plaintiff. Further, there is no evidence that Officer Contreras had any involvement in the filing of criminal charges or the decision to arrest Plaintiff. Thus, Plaintiff's claim must fail, and Defendant Contreras is entitled to summary judgment on Plaintiff's 20th claim for malicious prosecution under 42 U.S.C. § 1983.

## VI.    ADDITIONALLY, OFFICER CONTRERAS IS ENTITLED TO QUALIFIED IMMUNITY.

As set forth, *supra*, the undisputed facts and prior Court rulings already conclusively establish that Officer Contreras did not violate Plaintiff's Fourth Amendment rights by using excessive force (i.e., she used no force at all) or maliciously prosecuting him. Further, Officer Contreras is entitled to qualified immunity as to the malicious prosecution claim.

Qualified immunity is a judicially-created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions. *See Wyatt v. Cole*, 504 U.S. 158, 167-68 (1992). Qualified immunity balances "two important, competing interests: the need to hold public officials accountable for irresponsible actions, and the need to shield them from liability when they make reasonable mistakes." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017). Qualified immunity "spare[s] a defendant not only

unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). It is an "an immunity from suit rather than a mere defense to liability." *See Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As a result, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *See Saucier*, at 201 (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Qualified immunity protects public officials, such as police officers, "who act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (*quoting Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter*, 502 U.S. at 229 (1991) (*per curiam*) (*quoting Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. The Ninth Circuit also has held that a police officer is entitled to qualified immunity if a reasonable officer could have believed, even mistakenly so, that the officer's actions were justified so long as the officer's conclusion is objectively reasonable. *See Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993); *Franklin v. Fox*, 312 F.3d 423, 439 (9th Cir. 2002).

There are two prongs to the qualified immunity analysis. The courts may exercise their discretion in deciding which prong to analyze first under the facts of the case at bar. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity can only be denied in instances where (1) there is a constitutional violation, and (2) the constitutional right was clearly established at the time of the defendant's actions. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Thus, even if there is a violation of a constitutional right, in order for the courts to deny qualified immunity, it must be shown that the constitutional right was clearly established in such a way that a reasonable

13

person in the defendant's shoes would have known that it clearly established. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Police officers are presumed to be protected by qualified immunity. *See Gasho v. United States*, 39 F.3d 1420, 1438 (9th Cir. 1994). The plaintiff bears the burden of proving that the constitutional right violated was clearly established at the time of the alleged incident. *See Cohen v. San Bernardino Valley College*, 92 F.3d 968, 973 (9th Cir. 1996). "To overcome this presumption [of qualified immunity protection], a plaintiff must show that the officer's conduct was 'so egregious that any reasonable person would have recognized a constitutional violation.'" *Id.* [internal citations omitted]. The qualified immunity standard is a demanding one.

The Supreme Court has repeatedly held that the contours of the constitutional right at issue must be defined with specificity. *See Kisela v. Hughes*, 138 S. Ct. 1148 (2019); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In other words, it must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741. Generalities are not sufficient. *See City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021); *White v. Pauly*, 137 S. Ct. 548, 552 (2017) ["'clearly established' also should not be defined 'at a high level of generality.'"]. This line of inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition . . .," with the focus being on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201. In other words, "the unlawfulness must be apparent" under applicable legal precedent. *Anderson*, 483 U.S. at 640.

The standard is ***not*** whether clearly established law supported an officer's actions; rather, it is whether an officer's conduct was ***prohibited by*** clearly established law. The Supreme Court recently reminded the Ninth Circuit (and all the lower courts) of this standard in analyzing qualified immunity. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). While there does not need to be an identical case, existing precedent

14

must have placed the statutory or constitutional question beyond debate. *Id.* at 503. "Clearly established" must be particularized to the facts of the case and "in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. In other words, there must be an obvious connection between prior cases and the one at bar such that a reasonable officer would know that his conduct violates the constitutional right at issue. *See City of Tahlequah*, *supra*, 142 S. Ct. at 11.

It is not sufficient to say that it was "obviously unlawful" in the context of Fourth Amendment claims. *Hopson v. Alexander,* 71 F.4th 692, 698 (9th Cir. 2023). Plaintiff must prove that there is existing precedent sufficiently particularized to the facts of this case which shows that Defendants' conduct was unconstitutional. *See Hopson,* 71 F.4th at 698.

In its order denying Plaintiff's Motion for Partial Summary Judgment, this Court analyzed the facts of this incident under the malicious prosecution jurisprudence from the recent Supreme Court decision in *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556 (2024), which was decided less than three months before this incident. Specifically, this Court considered the split of authority among the Circuits between the "any-charge" versus "charge-specific" rules: "The any-charge rule provided that as long as a plaintiff faced any valid charge, a single meritless charge did not create a cause of action for malicious prosecution. The charge-specific rule, on the other hand, requires that each and every criminal charge be supported by probable cause." (Dkt. 54 at p. 9) [internal citations omitted]. Although the *Chiaverini* court ruled that the plaintiff in that case could proceed on his malicious prosecution claim under the charge-specific rule, this Court noted that the "Supreme Court, however, declined to decide what the proper causation test is under the charge-specific rule." *Id*.

Thus, as the Court already concluded in its prior order, under *Blake*, *supra*, 117 Cal. App. 4th at 557, there was probable cause to support the arrest of Plaintiff and the initiation of the charge of a violation of Penal Code § 245(c). *Id*. at p. 10.

15

The undisputed facts show that Officer Contreras had no involvement in the arrest or the initiation of charges against Plaintiff.  UMF #13, #24.  However, even if she did, there was no clearly-established precedent at the time of this incident that would have made the unlawfulness of Plaintiff's arrest and the charge of PC 245(c) apparent under the undisputed facts of this case. Thus, even under the charge-specific rule post-*Chiaverini*, Officer Contreras is shielded by the doctrine of qualified immunity and is entitled to summary judgment in her favor.

## VII.    CONCLUSION.

Based on the foregoing, Defendant Contreras's motion for summary judgment should be granted in its entirety.


Dated:  June 13, 2025            **HYDEE FELDSTEIN SOTO**, City Attorney
                                 **DENISE C. MILLS**, Chief Deputy City Attorney
                                 **KATHLEEN KENEALY,** Chief Assistant City Attorney
                                 **CORY M. BRENTE**, Senior Assistant City Attorney

                                 By:_____*Ty A. Ford*_____
                                    TY A. FORD, Deputy City Attorney
                                 *Attorneys for Defendant,* MONIQUE CONTRERAS