JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| PEOPLE OF CITY OF LOS ANGELES WHO ARE UN-HOUSED, and D. JACOBS, individually and as representatives of a class,<br><br>Plaintiffs,<br><br>v.<br><br>KAREN BASS, ET AL.,<br><br>Defendants. | Case No. 2:24-cv-09320-DOC-MAA<br><br>**ORDER GRANTING DEFENDANT CONTRERAS' MOTION FOR SUMMARY JUDGMENT [55] AND DISMISSING DEFENDANT BROWN** |

Before the Court is Defendant Monique Contreras's Motion for Summary Judgment (Dkt. 55). For the reasons described below, the Court **GRANTS** Defendant Contreras' Motion for Summary Judgment and dismisses Defendant Brown from this action.

I. BACKGROUND

A. Facts[1]

The Court detailed the facts of this case at length in its prior Order Denying Plaintiff's Motion for Partial Summary Judgment (Dkt. 54). The Court repeats those facts here as the evidence submitted has not changed them. Plaintiff did not submit an opposition brief or any evidence in opposition to the present Motion. Therefore, the Court relies on evidence submitted by Defendant Contreras ("Defendant") and some evidence submitted by Plaintiff previously in support of Plaintiff's Motion for Partial Summary Judgment.

Plaintiff Jacobs is an unhoused individual who lives at the corner of Main Street and Westminster Avenue in the Venice neighborhood of the City of Los Angeles. Declaration of David Jacobs ("Jacobs Decl.") (Dkt. 44), at 1. Plaintiff states that on September 2, 2024 Defendants Contreras and Brown "accosted plaintiff with their nightsticks…used excessive force against plaintiff by battering him with nightsticks while he was asleep in his tent, and then, after he alighted from his tent, pursued him many blocks to the Venice Boardwalk (with an LAPD helicopter also in pursuit, and arrest plaintiff, with no probable cause to do so." *Id*. Plaintiff further states that he was charged by Contreras and Brown with violation of California Penal Code § 245(c) and as a result of this charge, Plaintiff spent from September 2, 2024, until October 23, 2024 in custody. *Id*. Plaintiff states the charge against him was dismissed on October 22, 2024 and he was released. *Id*. According to Plaintiff, all of his belongings including his clothing and tent were lost as a result of this incident. *Id*. at 2. Finally, Plaintiff states that Officer Contreras "jabbed me with her nightstick." *Id*.

Officer Contreras' body-worn camera video ("BWC") from September 2, 2024, shows the following. *See* Ex. 2 (Dkt. 56). Contreras put on gloves and then began checking to see if anyone was inside two tents erected on the sidewalk. Contreras was with her partner, Officer Brown, who was not wearing a BWC. Officer Brown tapped her baton on the pole of a tent corner several times. Jacobs then lifted the tent flap, pointed a spray can at Brown, and sprayed

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

1  it at her from inside the tent. Brown moved away from the tent and Jacobs went back in the
2  tent. Contreras asked him, "Did you just spray pepper spray at me?" In response, Jacobs opened
3  the tent flap again and yelled "get away from me." His head and shoulders then came out of the
4  tent and he again sprayed a can towards Brown. The officers told him to stop spraying them and
5  called for backup. Jacobs continued to yell at the officers to get away from him and then fully
6  came out of his tent. Jacobs quickly stepped towards Contreras with the can held out. Contreras
7  then pulled out her taser and warned that Jacobs was "going to get tased." Jacobs then ran away
8  from Contreras and Brown, stopped further down the sidewalk, and continued to yell at the
9  officers. He shouted "fucking bitch" and "get the fuck out of here" at the officers. Contreras
10 warned Jacobs to stay away. He walked back closer to his tent and Contreras again threatened
11 him with her outstretched taser. Jacobs then walked in the street to the officers' patrol car and
12 Brown stated that he was pepper spraying the patrol car. The officers told him not to spray
13 inside their car. Jacobs continued to yell insults at the officers and told them to "stop banging
14 on my shit" and that he's "allowed to be here." Jacobs also yelled "you're not real" and "go
15 back to community college." Jacobs walked back near his tent and Brown stated, "he's got
16 pepper spray on him." Jacobs then ran away down the sidewalk away from the officers. At this
17 point, Officer Chavez had arrived, and all three officers ran after Jacobs. Additional police cars
18 arrived, and sirens are heard. The officers were not able to catch up to Jacobs. Contreras said to
19 Chavez, "It's David. He pepper-sprayed me and Bri but it didn't reach us." The officer
20 responded, "oh shit…still attempt." Contreras continued to walk around the block and a police
21 helicopter can be heard overhead. Contreras' BWC is 7 minutes and 44 seconds long. *Id*.

Officer Chavez's BWC confirms the second half of Contreras' BWC. *See* Ex. 3 (Dkt.
23 56). Officer Espinoza's BWC captures the eventual arrest of Jacobs outside a store along the
24 Venice Boardwalk as follows. *See* Ex. 4 (Dkt. 56). Officers ran up to Jacobs, Jacobs sat on the
25 ground, and officers handcuffed him. Jacobs said, "I didn't do anything wrong to them…I just
26 sprayed something at them…to keep them away from my stuff, they were banging on it, they
27 were breaking my things…they were breaking my stuff." Officers then walked Jacobs off the
28 Boardwalk and to a police car on a nearby street. The officer walking with Jacobs asked him

what he sprayed at the officers and Jacobs responded "pepper spray…because they were banging on my tent, they can't be doing that…I'm protecting myself." Jacobs continued to say that officers were messing with his stuff and "banging" on his tent and stuff. He also stated repeatedly that he was "protecting myself from them ripping my stuff down." Officers then put Jacobs in the police car and the BWC ends after 10 minutes and 44 seconds. *Id*.

Officers arrested Jacobs for violation of California Penal Code §245(c), assault with a deadly weapon or by any means likely to produce great bodily harm on a peace officer and transported him to jail. Ex. 1 (Dkt. 55-4). On September 4, 2024, the Los Angeles City Attorney's Office charged Jacobs with the following misdemeanors: California Penal Code § 148(a)(1), § 240/241(c), § 22810(g)(1), and Los Angeles Municipal Code § 41.18(e). Ex. 5 (Dkt. 55-6). Jacobs appeared in court and was arraigned on September 4, 2024. Ex. 6 (Dkt. 55-7). At the arraignment, Jacobs' appointed public defender declared a doubt as to his mental competence and criminal proceedings were suspended. *Id*. Ultimately, Jacobs was granted mental health diversion, released on October 2, 2024, and all counts were dismissed through diversion on October 23, 2024. Ex. 8 (Dkt. 55-9); Ex. 9 (Dkt. 55-10).

**B. Procedural History**

On October 29, 2024, Plaintiff filed his Complaint (Dkt. 1). On December 13, 2024, Defendants Monique Contreras, Karen Bass, and Paul Krekorian filed a Motion to Dismiss (Dkt. 16). On January 24, 2025, the Court granted Defendants' Motion to Dismiss (Dkt. 26). The Court dismissed sixteen of the eighteen Defendants sued by Plaintiff. The only Defendants remaining were Los Angeles Police Officers Contreras and Brown. The Court dismissed all claims and allowed Plaintiff leave to amend only claims 19 (excessive force in violation of the Fourth Amendment) and 20 (malicious prosecution in violation of the Fourth Amendment). Claims 1 through 18 were dismissed with prejudice. On February 7, 2025, Plaintiff filed a First Amended Complaint (Dkt. 32). On April 26, 2025, Plaintiff filed a Motion to Consolidate with Case No. 2:22cv-08010-DOC (Dkt. 42). The Court denied consolidation on May 22, 2025, as moot because Case No. 2:22cv-08010-DOC was closed (Dkt. 51).

On May 5, 2025, Plaintiff filed a "Motion for Partial Summary Judgment On Issues Of Excessive Force and Of Malicious Prosecution" as to Defendant Contreras (Dkt. 44) and the Court heard oral argument on that motion on June 2, 2025. On June 5, 2025, the Court issued its Order Denying Plaintiff's Motion for Partial Summary Judgment ("Prior Order") (Dkt. 54). In the Court's Prior Order, the Court held that there was no force used on Plaintiff by the officers and that there was probable cause to arrest Plaintiff for violation of California Penal Code §245(c) based on the undisputed video evidence.

On June 13, 2025, Defendant Monique Contreras, the only remaining Defendant who has been served and appeared in this matter, filed the present Motion for Summary Judgment ("Mot." or "Motion") (Dkt. 55). Plaintiff failed to file an opposition to the Motion and Defendant filed a notice of non-opposition to the Motion on June 30, 2025 (Dkt. 57). The Court scheduled oral argument for July 14, 2025, but when the case was called, Plaintiff failed to appear. Plaintiff did not file any opposing papers or a request for continuance of the hearing date.

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

Summary judgment is also proper when there is no genuine dispute of material fact due to a complete failure of proof. "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 322–24.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id*.

## III. DISCUSSION

Defendant Contreras argues that she is entitled to summary judgment on the two remaining §1983 claims, excessive force and malicious prosecution. Defendant points out that she is the only remaining defendant who has been served and has appeared in the case. Officer Brown has never been served or appeared.

Defendant argues that the Court's prior factual and legal findings in its Order Denying Plaintiff's Motion for Partial Summary Judgment ("Prior Order") compel granting summary judgment in favor of Defendant. Plaintiff did not file any opposition to Defendant's Motion. The Court's Prior Order specifically held that there was no force used by either officer against Plaintiff and that there was probable cause to arrest Plaintiff for violation of California Penal Code §245(c) based on the video evidence. Based on the undisputed evidence before the Court, summary judgment on the two remaining claims is granted for Defendant.

### A. Plaintiff's Fourth Amendment Excessive Force Claim

"Our touchstone in evaluating an officer's use of force is objective reasonableness." *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 627–28 (9th Cir. 2022) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The reasonableness of the force used is analyzed by balancing the "nature and quality of the intrusion" on the plaintiff's Fourth Amendment rights against the government's interest in the force used. *Id*.

The BWC evidence shows that at no time did Contreras or any other officer use her baton against Plaintiff or make physical contact with Plaintiff in any way. Brown hit her baton against the corner pole of Plaintiff's tent several times. Contreras and Brown held out a taser and a baton to warn Plaintiff to stay away from them but neither used their weapons against Plaintiff. Contreras never took out her baton. Plaintiff's version of events on September 2, 2024 "is blatantly contradicted by the record" and "so utterly discredited by the record that no reasonable jury could have believed him" so the Court must adopt the version of the facts shown in the video evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff's statements to officers during his arrest confirm these facts. Plaintiff never complained that he was hit or touched by officers but rather repeatedly complained that they touched his tent and "stuff."

In short, the evidence contradicts Plaintiff's assertions about the force used against him. As the Court previously held, Defendant Contreras did not use force against Plaintiff. Moreover, Plaintiff has submitted no evidence to oppose the present Motion. Therefore, based on the undisputed facts, no reasonable jury could find for Plaintiff and Defendant is entitled to summary judgment on Plaintiff's excessive force claim. The Motion is GRANTED as to this claim.

### B. Plaintiff's Fourth Amendment Malicious Prosecution Claim

The Supreme Court has recognized a Fourth Amendment claim under §1983 for malicious prosecution. *Thompson v. Clark*, 596 U.S. 36, 42 (2022). "[T]he gravamen of the Fourth Amendment claim for malicious prosecution…is the wrongful initiation of charges without probable cause." *Id*. at 43. The cause of action accrues when the prosecution terminates without a conviction. *Id*. at 48-49.

To prevail on a malicious prosecution claim, Plaintiff must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). "Probable cause is an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009).

Normally, the filing of a criminal complaint by the prosecutor shields "those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id*.

1    Here, Plaintiff was arrested for violation of PC 245(c), a felony, and then the city
2 attorney charged him two days later with the lesser misdemeanor assault charge and other
3 misdemeanor charges. There is no doubt that there was probable cause for the misdemeanor
4 counts charged by the city attorney based on Plaintiff spraying officers with pepper spray and
5 fleeing the scene. Plaintiff does not sue the city attorney. He only sues Officer Contreras for
6 malicious prosecution. Thus, assuming the filing of the criminal complaint does *not* shield
7 Contreras, the questions are (1) whether there was probable cause for Contreras to charge
8 Plaintiff with PC 245(c) and, if there was not probable cause, (2) whether damages were caused
9 by that felony charge. *See Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556 (2024).

10    A "Fourth Amendment malicious-prosecution suit depends not just on an unsupported
11 charge, but on that charge's causing a seizure…" *Id*. at 564. Here, there is no dispute that
12 Plaintiff was seized by being arrested and detained on the single PC 245(c) charge.

13    "Probable cause exists where 'officers have knowledge or reasonably trustworthy
14 information sufficient to lead a person of reasonable caution to believe that an offense has been
15 or is being committed by the person being arrested.'" *Hollamon v. City of Los Angeles*, No. 24-
16 341, 2025 WL 927310, at *1 (9th Cir. Mar. 27, 2025) (quoting *United States v. Lopez*, 482 F.3d
17 1067, 1072 (9th Cir. 2007)).

18    PC 245(c) provides: "Any person who commits an assault with a deadly weapon or
19 instrument, other than a firearm, or by any means likely to produce great bodily injury upon the
20 person of a peace officer or firefighter, and who knows or reasonably should know that the
21 victim is a peace officer or firefighter engaged in the performance of his or her duties, when the
22 peace officer or firefighter is engaged in the performance of his or her duties, shall be punished
23 by imprisonment in the state prison for three, four, or five years." Cal. Penal Code §245(c).

24    "Most courts have found tear gas, mace or pepper spray to be dangerous or deadly
25 weapons capable of inflicting great bodily injury." *People v. Blake*, 117 Cal. App. 4th 543, 557
26 (Cal. Ct. 2004). The California Court of Appeal in *Blake* upheld a jury verdict finding that the
27 defendant's use of pepper spray or mace during robberies was a dangerous weapon capable of
28 inflicting serious bodily injury. *Id*. Based on *Blake* and the undisputed facts in the BWC video

showing Plaintiff pepper spraying the officers, the Court concluded in its Prior Order that there was probable cause to arrest and initiate the PC 245(c) charge against Plaintiff. Because the undisputed evidence has not changed, the Court again holds that there was probable cause to arrest Plaintiff for violation of PC 245(c). Thus, Plaintiff's malicious prosecution claim fails as a matter of law for this reason.

Additionally, Defendant Contreras states that she did not author the arrest report in this incident and "had no involvement in the decision-making as to what charges to arrest Mr. Jacobs on or what criminal charges were filed against Mr. Jacobs. I was not involved in the criminal court process in any manner." Declaration of Monique Contreras (Dkt. 55-2). Based on this undisputed declaration, Defendant Contreras did not initiate the charges and may not be the proper target for Plaintiff's claim regardless.

Therefore, Defendant Contreras is entitled to summary judgment on the malicious prosecution claim and the Motion is GRANTED as to this claim.

The Court does not reach Defendant's qualified immunity arguments because the Motion is resolved on the aforementioned issues alone.

**C. Dismissal of Officer Brown**

Under Federal Rule of Civil Procedure 4(m), the Court dismisses Officer Brown because Plaintiff has failed to serve her within 90 days of the filing of the Complaint. The Court previously put Plaintiff on notice of this issue in its January 24, 2025 Order Granting Defendants' Motion to Dismiss (Dkt. 26). Alternatively, dismissal of Officer Brown is proper as Plaintiff has failed to prosecute the case against her. If she had been served, summary judgment in favor of Officer Brown would also be appropriate for the same reasons articulated in this Order and the Court's Prior Order which put Plaintiff on notice of such.

### IV. Disposition

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. Judgment is entered in favor of Defendant Monique Contreras on Plaintiff's remaining claims for excessive force and malicious prosecution. Defendant Brown is also dismissed for failure to serve her and prosecute the action against her.

DATED: July 14, 2025

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE